RECEIVED
IN MONROE, LA

DEC 2 9 2006
₯
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **CHARLES CASSEY** | **CIVIL ACTION NO. 05-0152** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **COCA-COLA ENTERPRISES** | **MAG. JUDGE MARK L. HORNSBY** |

## RULING

This is an employment discrimination action brought by Plaintiff Charles Cassey ("Cassey") against his employer, Coca-Cola Enterprises ("CCE"). Cassey alleges that he was subjected to race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*("Title VII") and 42 U.S.C. § 1981 by being denied employment opportunities and the same quality of tools provided to Caucasian employees. Cassey further alleges that he was subjected to racial harassment by coworkers and supervisors in violation of Title VII.

On October 20, 2006, CCE filed a Motion for Summary Judgment [Doc. No. 28], seeking dismissal of all Cassey's claims. On November 28, 2006, pursuant to an extension of time granted by the Court, Cassey filed a memorandum in opposition [Doc. No. 33] to the Motion for Summary Judgment. On December 8, 2006, CCE was granted leave of Court to file a reply memorandum [Doc. No. 35].

For the following reasons, CCE's Motion for Summary Judgment is GRANTED.

### I.  FACTS AND PROCEDURAL HISTORY

CCE engages in the bottling, sale, and distribution of Coca-Cola and other related

beverages. CCE has adopted, posted, and disseminated to all employees anti-discrimination, anti-harassment, and anti-retaliation policies. Additionally, CCE provides all employees with a Code of Business Conduct, which contains an anti-discrimination policy and a toll-free number for employees to report discrimination.[1]

On February 1, 1991, Cassey, an African-American, was hired as a temporary employee at CCE's Monroe facility. Cassey was aware of CCE's policies against discrimination and harassment.

Two months later, Cassey became a full-time production employee at CCE.

In September 1991, Cassey was promoted to the position of Machine Operator with an accompanying increase in pay. Cassey continued in this position until June 8, 1996, when his title changed to Senior Machine Operator.

In October 1999, Cassey was promoted to Maintenance Mechanic. Cassey was given the tools of his predecessor, just as his Caucasian co-worker, Tim Ogleby, was given the tools of his predecessor. Cassey contends that the quality of his tools is inferior to the quality of those provided to Caucasian employees.

In October 2000, Cassey was promoted to Senior Maintenance Mechanic. At this time, senior mechanics were appointed based upon the subjective criteria of management.

Some time in 2001, Cassey and a co-worker, Cornist Broadway ("Broadway") reported employment concerns about racial discrimination to Marsha Lee ("Lee") of CCE's Human

---

[1] CCE also notes that it has Ombudsmen to offer confidential services to those who believe they have suffered discrimination, but Cassey points out that these services were not offered until after the relevant time period of this lawsuit.

2

Resources, but neither mentioned any race-based comments.

In the summer of 2001, CCE hired a new Operations Manager for the Monroe facility, Craig Blackburn ("Blackburn"). Under Blackburn's direction, the Maintenance Crew was reorganized, and a new skills assessment program was instituted.

Mechanics in the Maintenance Crew are classified as either A, B, or C Mechanics under the skills assessment program. An "A" Mechanic is the most senior position, with B and C Mechanics deemed to have fewer or lesser skills. The program identifies the skills needed to acquire each level. When this program was instituted, each of the mechanics was asked to fill out a self-evaluation form. They were also assessed by supervisors and classified accordingly. Cassey contends that the supervisors' assessments were based on subjective observations.

Under the new program, all Lead Mechanics were reclassified as Senior Mechanics, and all Senior Mechanics, including Cassey, were re-classified as Maintenance Mechanics. However, the reclassification did not result in a decrease to employee pay, benefits, or job responsibilities.

Although CCE formerly required employees to complete written transfer requests to apply for promotions, employees are now able to apply for promotions through an electronic system. The new procedure for applying for promotions is used for almost all positions at the Monroe facility, except certain Maintenance positions.

In order to become a Senior Mechanic, an employee must develop and demonstrate certain skills. The Senior Mechanic position is not posted or "applied for" by employees. Rather, Maintenance Mechanics become Senior Mechanics once they develop and demonstrate

the necessary skills and are then given an increase in pay[2] without additional or new job responsibilities. There are no set number of Senior Mechanic positions available, and all employees on the Maintenance Crew could conceivably become Senior Mechanics.

Cassey contends that he was discriminatorily assigned menial tasks. He was asked to do tray work, which is "laborious," but he admits that it is "important." He also admits that the parts shop had to be cleaned daily to keep production running. Finally, he admits that the boiler room job is important, and it is viewed as desirable because it gives employees the chance to learn valuable skills. Caucasian employees also perform tray work, clean the parts shop, and work in the boiler room.

Cassey has filled out self-assessments in which he admits that he does not have the skills to be a Senior Mechanic. A July 26, 2005 assessment by his then-supervisor, Joey Spann ("Spann"), is an accurate description of his skills, and he admits that Spann made changes to the assessment at his request before finalizing it.

Cassey has no knowledge of the individual assessments of other mechanics.

Cassey also contends that he has been denied training opportunities. However, he has attended an external class on refrigeration. The only other mechanics who have attended outside training courses are Ben Taylor, an African-American, and Jeremy Rhodes, a Caucasian. Cassey was not provided ammonia training, but only one mechanic per shift was trained to turn off ammonia in the case of emergencies. There is no increase in pay for ammonia training, and this

---

[2] The parties dispute whether the increase in pay is "slight." *Cf.* Defendant's Statement of Material Facts Not At Issue in Support of Defendant's Motion for Summary Judgment, ¶ 29 [Doc. No. 28] to Plaintiff's Response to Statement of Undisputed Material Facts, ¶ 29 [Doc. No. 33-3].

4

task is no longer assigned to mechanics, but is instead handled by local firefighters.

On March 24, 2004, Cassey filed a charge of race discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"). Prior to filing his charge, Cassey complained of "race issues" to CCE, but never complained about any racial comments. Cassey's charge does not allege a hostile work environment.

On October 29, 2004, the EEOC issued a Dismissal and Notice of Right to Sue, finding no cause to determine that a statute had been violated.

Cassey filed this lawsuit on January 26, 2005, asserting claims of race discrimination[3] and harassment in violation of Title VII.

## II. LAW AND ANALYSIS

### A. Motions for Summary Judgment

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.* The moving party cannot satisfy its initial

---

[3]Cassey did not bring a claim of retaliation.

5

burden simply by setting forth conclusory statements that the nonmoving party has no evidence to prove its case. *Ashe v. Corley*, 992 F.2d 540, 543 (5th Cir. 1993).

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). The nonmoving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

## B.  Race Discrimination

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1).

Similarly, 42 U.S.C. § 1981 provides that "[a]ll persons . . . shall have the same right . . . to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981(a).

In employment discrimination cases, a plaintiff may prove his case by direct or circumstantial evidence. Cassey seeks to rely on circumstantial evidence to support his claims. [Doc. No. 33, p. 6]. In a circumstantial case, courts apply the familiar burden-shifting scheme of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).[4]

---

[4] Because the same fact pattern underlies Cassey's discrimination claims under Title VII and Section 1981, the Court analyzes the claims jointly using the same standard of proof. *Roberson v. Alltel Information Servs.*, 373 F.3d 647, 651 (5th Cir. 2004).

6

First, the plaintiff must make out a prima facie case of discrimination by demonstrating that he (1) is a member of a protected class; (2) was qualified for his position; (3) was subjected to an adverse employment action; and (4) "others similarly situated were treated more favorably." *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999); *see also Okoye v. The Univ. of Tex. Houston Health Science Ctr.*, 245 F.3d 507, 512 (5th Cir. 2001).

If the plaintiff establishes a prima facie case, then the burden of productions shifts to the defendant to articulate legitimate, non-discriminatory reasons for the adverse action. *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 142 (2000).

Finally, if the defendant meets its burden, then the plaintiff must show that the defendant's articulated reasons are pretext for discrimination. *Id.* at 143.

CCE argues that none of Cassey's complaints of discrimination rise to the level of adverse employment actions under Fifth Circuit jurisprudence and, therefore, he cannot make out a prima facie case of race discrimination. Further, even if they did, CCE contends that Cassey has no evidence that its legitimate, non-discriminatory reasons for the actions are pretextual.

Cassey admits that he has not suffered "a loss of income or the loss of a specific job opportunity." [Doc. No. 33, p. 2]. However, he asserts that CCE cannot engage in "the Chinese water torture" method of discrimination.[5] He contends that CCE provided him with tools that are inferior to those provided to Caucasian employees, that he was required to perform more "menial" tasks than Caucasian employees, that he should have been classified a Senior Mechanic, that he was denied vacation on one occasion, that he has been denied training, that he

---

[5]Cassey appears to have argued that his "Chinese water torture" theory is sufficient to support both his claim of discrimination and harassment.

7

has been denied overtime, and that African-American employees are given less favorable shifts.

There is no dispute that Cassey is a member of a protected class as an African-American and that he is qualified for the position he continues to hold at CCE. However, CCE contends that Cassey cannot establish the third prong of his prima facie case, i.e., that he suffered an adverse employment action. The Court finds that he cannot make out his prima facie case of discrimination and that CCE is entitled to summary judgment.

In the Fifth Circuit, only "ultimate employment decisions" such as "hiring, granting leave, discharging, promoting, and compensation" are actionable "adverse employment actions" under Title VII and Section 1981.[6] *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir.2004). "An employment action that 'does not affect job duties, compensation, or benefits' is not an adverse employment action." *Id.* (quoting *Felton v. Polles*, 315 F.3d 470, 486 (5th Cir.2002)).

While, if true, some of the actions alleged by Cassey are unfortunate and perhaps unfair, they are not actionable. With regard to the tools he was provided, Cassey admits that the tools work and that he has been given new tools when the ones he has become ineffective; therefore, the tools he was given allow him to perform his job and do not affect his job duties.

With regard to Cassey's other complaints, many have already been addressed by the Fifth Circuit and determined not to meet the adverse employment action standard. *See Southard v.*

---

[6]The Supreme Court recently decided the case of *Burlington Northern & Santa Fe Railway Co. v. White*, 126 S.Ct. 2405 (2006), in which it held that a plaintiff asserting a retaliation claim under Title VII need only show that "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 2415. However, the Supreme Court's decision applies only to retaliation claims, and the Fifth Circuit continues to use the "ultimate employment decision" decision analysis when considering discrimination claims. *See Pryor v. Wolfe*, No. 05-21067, 2006 WL 2460778 at *2 (5th Cir. Aug. 22, 2006).

8

*Texas Bd. of Crim. Justice*, 114 F.3d 539, 555 (5th Cir. 1997) ("Undesirable work assignments are not adverse employment actions."); *Mowbray v. American Gen. Life Cos.*, 162 Fed. Appx. 369, 374 (5th Cir. 2006) (Assignment to a particular shift does not constitute an adverse employment action); *Hockman v. Westward Communications, L.L.C.*, 122 Fed. Appx. 734, 747 (5th Cir. 2004) (Failure to provide training was not an adverse employment action).

The denial of vacation and overtime might be adverse employment actions under some circumstances as "benefits" of employment, but Cassey has failed to meet his prima facie burden in this case.

First, Cassey contends that he has been denied vacation, but he could only cite to one day around Thanksgiving in 2001 or 2002. This denial cannot be actionable because it is time-barred, occurring more than 300 days prior to the filing of his EEOC charge. *See National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002). Even if it were not time-barred, Cassey has not provided the Court with sufficient information to determine whether the denial of one vacation day around a holiday was an ultimate employment action. Certainly, the fact that Cassey was not allowed to take a vacation day on a particular holiday is not actionable if he were allowed to take it at another time.

Second, Cassey claims to have been denied overtime, but could not provide any examples or further information. Again, he has failed to provide the Court with sufficient information to conclude that he has met his prima facie burden.[7]

---

[7]Even if the Court were to conclude that Cassey has shown an adverse employment action based on these unsupported allegations, he has still failed to show under the fourth prong that similarly situated Caucasian employees under nearly identical circumstances were allowed to take vacation at the time they wished or work overtime. *See Perez v. Tex. Dep't of Crim. Justice*, 395 F.3d 206, 213 (5th Cir.2004) (citing *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir.

Finally, Cassey contends that he has been denied classification as a Senior Mechanic. While this could be an adverse employment action because Senior Mechanics receive an increase in pay, Cassey admits that he does not have the skills required for the classification.[8] Therefore, the Court cannot find that an adverse action was taken against him. Even if Cassey can technically meet the requirements of showing an adverse employment action on this basis, he has not met the fourth prong by showing that similarly situated Caucasian employees were classified as Senior Mechanics.[9]

Under these circumstances, the Court finds that Cassey has failed to establish a prima facie case of race discrimination. Accordingly, CCE's Motion for Summary Judgment is GRANTED on Cassey's race discrimination claims under Title VII and Section 1981.

### C. Hostile Work Environment

Title VII has been interpreted to prohibit racial harassment, as well as discrimination. *See Morgan*, 536 U.S. at 116 n.10.

Cassey asserts that he has been subjected to a racially hostile work environment through the actions of co-workers and supervisors at CCE.

CCE responds that Cassey failed to file an EEOC charge alleging hostile work environment. Even if he met the administrative prerequisites, CCE argues that the actions and statements upon which Cassey relies are insufficient as a matter of law to raise a genuine issue of

---

1991)).

[8] On summary judgment, the Court will not consider CCE's argument that the increase in pay is too "minimal" to be considered an ultimate employment decision.

[9] Certainly, Cassey cannot show that CCE's failure to classify him as a Senior Mechanic is pretext for discrimination when he admits that he does not have the necessary skills.

material fact for trial.

### 1. Scope of EEOC Charge

Prior to addressing the substance of his claim, CCE argues that Cassey cannot proceed with a claim of hostile work environment because it was never the subject of an EEOC charge. Cassey does not respond to this argument.

"The scope of inquiry of a court hearing in a Title VII action 'is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of a charge of discrimination.'" *Young v. City of Houston*, 906 F.2d 177, 179 (5th Cir.1990) (quoting *Sanchez v. Standard Brands*, 431 F.2d 455, 466 (5th Cir. 1970)).

In this case, Cassey filed an EEOC charge in which he alleged race discrimination and retaliation on the following bases:

1. I am an African-American male and current employee of [CCE]. I have been employed with [CCE] since February 1991.

2. Throughout my employment with [CCE] I have sought or made known my interest in achieving or reaching higher positions. [CCE] does not post positions internally for competitive bids. Moreover, African-American employees are denied the opportunity to promote to supervise [sic] and managerial positions. Whites are preselected for position [sic] before the positions are posted and often times they are given training before the jobes [sic] are posted that qualifies them for the position [sic]

3. Upon information and belief [CCE] discriminates against African-Americans as a class in promotions, pay, demotions and other terms and conditions of employment.

4. Upon information and belief African-American employees and potential employees are denied supervisor, managerial, and upper managerial positions as a class because of their race.

[Charge of Discrimination, attached as Exhibit to Complaint, Doc. No. 1]. Cassey does not

11

allege that he was subjected to any race-based comments or actions in the Charge.

While racially hostile work environment claims may easily grow out of the scope of an EEOC investigation into race discrimination, in this case, there is no evidence in the record to show that the EEOC or CCE had reasonable notice that Cassey believed he had been racially harassed. *See Otokunrin v. MBNA Technology, Inc.*, No. 03-1509, 2004 WL 833599 (N.D.Tex. April 16, 2004) (District court dismissed plaintiff's allegations of hostile work environment as outside the scope of her EEOC charge and failing to give the defendant notice of this claim when her charge alleged only race discrimination in the denial of promotions and a claim of retaliation); *Glover v. United States*, No. 01-3813, 2003 WL 1338732, at *5 (E.D.La. March 14, 2003) (District court dismissed plaintiff's hostile work environment claim because such claim was never submitted to EEOC), *aff'd without opinion*, 85 Fed.Appx. 402, 2004 WL 120518 (5th Cir. 2004). Cassey's general reference to "other terms and conditions of employment" is not enough to apprise CCE that he was also subjected to the specific actions and statements alleged.

For this reason alone, the Court finds that CCE is entitled to dismissal of Cassey's hostile work environment claims, and its Motion for Summary Judgment is GRANTED.

### 2. Substantive Merits

While the Court has concluded that Cassey failed to meet the administrative prerequisites, arguably, there may be some overlap between Cassey's race discrimination claims and his hostile work environment allegations. Therefore, the Court will also address the substantive merits of his claim.

In order to prevail on a claim of hostile work environment, a plaintiff must prove the following elements:

(1) he belongs to a protected group;

(2) he was subjected to unwelcome harassment;

(3) the harassment of which he complained was based on race;

(4) the harassment affected a term, condition, or privilege of employment; and

(5) the employer knew or should have known of the harassment and failed to take remedial action.

*Frank v. Xerox Corp.*, 347 F.3d 130, 138 (5th Cir. 2003). If the "the harassment is allegedly committed by a supervisor with immediate (or successively higher) authority over the harassment victim," then the plaintiff need not establish the fifth element. *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 353-54 (5th Cir. 2001).

In determining whether a workplace constitutes a hostile work environment, courts should look at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Green v. Adm'rs. of the Tulane Educ. Fund*, 284 F.3d 642, 655 (5th Cir. 2002). A recurring point in the Supreme Court's hostile environment cases is that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). The standards set forth by the Supreme Court seek to ensure that Title VII does not become a "general civility code." *Oncale v. Sundowner Offshore Svcs. Inc.*, 523 U.S. 75, 80 (1998). Properly applied, they will filter out complaints attacking "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Faragher*,

524 U.S. at 788 (quoting B. LINDEMANN & D. KADUE, SEXUAL HARASSMENT IN EMPLOYMENT LAW 172 (1992)). The Supreme Court has made it clear that conduct must be so extreme, so severe or pervasive, as to amount to a change in the terms and conditions of employment. *Id.* The objective severity of the harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances. *Oncale*, 523 U.S. at 81.

Cassey argues, as he did with his race discrimination claim, that he was subjected to a "Chinese water torture" method of harassment that meets the necessary standards for hostile work environment.

There is no dispute that Cassey is a member of a protected class as an African-American male. However, CCE contends that the comments he alleges do not meet one or more of the remaining prongs of the five-pronged test. Cassey alleges the following:

1. Another employee told Cassey that he heard Eddie White, a supervisor, use the "N" word.

2. There was an incident involving a noose, but Cassey never saw the noose.

3. Pam Wright, a payroll employee, had a rebel flag on her desk, but Cassey never saw it.

4. John McKay cursed Cassey and other employees, but Cassey never heard him use a racial slur.

5. Cassey heard Eddie White used the "N" word in 1995 as a "greeting" to another employee, Frank Hill.

6. Eddie White called Cassey "boy" in 1998 before Cassey became a mechanic.

7. A former manager, Danny Castleton (who left CCE on April 1, 2001) made a comment about three African-Americans not working on the same shift.

8. Another mechanic, John Cranford, made a comment about African-American employees having an opportunity to bond.

14

9. Spann made the following comments: "Do I seem like a racist to you?"; (after a hernia operation) "I look like you down there now"; "Where I am from, Black people still go in through the back door"; and "I would disown my daughter if she married a black man."

10. On May 4, 2005, when Cassey asked for a cigarette, a coworker responded, "Only white employees can do this."

Having reviewed the record in this matter, the Court finds that these allegations simply do not rise to the level of severe or pervasive conduct required for recovery. Cassey's "Chinese water torture" theory has some merit in that an hostile work environment claim need only be severe or pervasive, not both. *See Harvill v. Westward Commc'ns L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005)("In requiring [the plaintiff] to establish that the conduct was both severe and pervasive, the district court applied the wrong legal standard. . . . [T]he Supreme Court has stated that Title VII provides a legal remedy to victims who establish that the abusive conduct was severe or pervasive."). However, in this case, Cassey has failed to meet either standard.

As argued by CCE, at least the first three allegations are based upon hearsay and not Cassey's personal observations. Further, Cassey's fourth allegation is not based upon race. Cassey's fifth and sixth allegations are untimely under Title VII and Section 1981, having taken place more than 300 days before his EEOC charge was filed and more than four years before his 1981 lawsuit was filed. *See Jones v. R.R. Donnelley and Sons Co.*, 541 U.S. 369, 383-84 (2004) (Statute of limitations for Section 1981 is four years).

The remaining allegations do not rise to the level required to state a claim for a severe or pervasive hostile work environment as a matter of law. While the Court does not condone any of the statements or actions, they are not sufficient alone or taken together to create an abusive work

environment or to otherwise alter Cassey's terms or conditions of employment.

Accordingly, CCE's Motion for Summary Judgment on Cassey's hostile work environment claim is GRANTED.

## III. CONCLUSION

For the foregoing reasons, CCE's Motion for Summary Judgment [Doc. No. 28] is GRANTED, and Cassey's claims are DISMISSED WITH PREJUDICE, each party to bear its own costs.

MONROE, LOUISIANA, this 28 day of December, 2006.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE